Earnest William CARR, Otherwise known as E. W. Carr, d/b/a Carr's Transfer Company, and Cimarron Insurance Company, a corporation, Plaintiffs in Error,

v.

Esther INGLE, Defendant in Error.

No. 40598.

Supreme Court of Oklahoma.

Sept. 29, 1964.

**652**

Best, Sharp, Thomas & Glass, Jack M. Thomas, Joseph A. Sharp, Tulsa, for plaintiffs in error.

Lincoln Battenfield, Pryor, for defendant in error.

PER CURIAM:

In this opinion we shall refer to the parties as they appeared below—defendant in error as plaintiff and plaintiffs in error as defendants. The plaintiff, Esther Ingle, brought this action against defendants, Carr, d/b/a Carr's Transfer Company, and Cimarron Insurance Company, in the District Court of Mayes County, Oklahoma, by petition, alleging that while she was riding as a guest passenger in a Chevrolet auto-mobile being driven by Lila Gene Skinner, she sustained serious and permanent bodily injuries to her neck and spine, by reason of the rear-end of the Skinner automobile being run into while said automobile was stopped in a line of traffic a short distance north of the intersection of U.S. Highway 69 and Oklahoma State Highway 33. As a result of the injuries sustained the plaintiff was compelled to endure two hospital tours of 34 and 26 days respectively, and undergo two spinal operations for removal of a disc and joint fusions, during which time she was in traction, suffered greatly, and has been disabled ever since. For said injuries and damages she received judgment in the sum of $18,000. From the judgment thereon this appeal has been perfected.

There are but two contentions raised in this appeal. First, the defendants contend "that the trial court erred in refusing to instruct the jury that plaintiff, by her pleadings, had admitted the driver of the automobile in which she was riding was her agent, and therefore negligence of the driver was imputable to plaintiff." The defendants further contend "that the trial court erred in instructing that as a matter of law the negligence of the driver was not imputable to the plaintiff."

To support this contention the defendants rely on the fact that in their answer they alleged that Mrs. Skinner was acting as the agent of Mrs. Ingle and that the negligence of the agent was imputable to Mrs. Ingle, the plaintiff. In this connection it appears, though the facts were specifically alleged in the petition, under sworn verification, that Mrs. Ingle was a guest passenger in the Skinner car, the defendants' allegation of agency was not denied under oath as provided in 12 O.S.1961 § 286:

"In all actions, allegations * * * of any appointment of authority, * * * duly verified by the affidavit of a party, his agent or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

■ The plaintiff rightfully contends the foregoing statute is not applicable under the conditions herewith presented because the benefits of the statute were waived by proof from both the plaintiff and Mrs. Skinner, offered without objection, negating the existence of agency. The record clearly supports the contention of plaintiff that there was no agency involved and affirmatively establishes, without the slightest proof to the contrary, that Mrs. Ingle was an invited guest at the time the truck collided with the Skinner car. This proof was developed on both direct and cross examination of the aforesaid parties by counsel for both plaintiff and defendants.

To have made the statutory requirement available defendants would have had to have objected to the introduction of evidence on the question of agency. But sitting by, without objection, the defendants waived the statutory requirement that their allegation of agency might be taken as true, even though the same was not denied under oath in the plaintiff's reply. Under the facts of this case, the failure of verification as a matter of law does not amount to an admission of agency. On this point see Krieger v. Marshall, Okl., 292 P.2d 379:

"As pointed out, the purpose of requiring a verification of the pleadings in such cases, is to enable the parties to determine upon what issues it will be necessary to present evidence. And, if at the trial a question arises as to whether the fact, which ordinarily would be admitted by the absence of the verification, does exist, and the parties have an opportunity to litigate the question and do so, we think this amounts to a waiver of the necessity of a verification of the reply, and such lack of verification does not, as a matter of law, amount to an admission of the allegation of the answer on such point."

Such is clearly the situation herein. See also Burford v. Hughes, 75 Okl. 150, 182 P. 689; Gibson Co. v. Dye, 179 Okl. 385, 65 P.2d 407; Miller v. Troy Laundry Machinery Co., 183 Okl. 626, 84 P.2d 627.

To follow the defendants' contentions in this record would convert 12 O.S.1961 § 286, into a trap for the unwary, instead of a rule of procedure designed to fix the burden of proof.

■ The defendants complain the trial court gave no instruction on agency, but this was not error under this record for there was no evidence to sustain such an instruction and the court did not err in instructing the jury that the negligence of Mrs. Skinner, if any, could not be imputed to the plaintiff. Stillwater Milling Co. v. Templin, 182 Okl. 309, 77 P.2d 732; Pridgin v. Wilkinson (10th Cir.1961), 296 F.2d 74. Moreover, there being no evidence of agency, it would have been error for the trial court to have instructed on agency. Woolfolk v. Semrod, Okl., 351 P.2d 742.

It is not necessary for us to discuss the proposition of whether the fact the plaintiff's verification of her petition as to the fact of host and guest was good against the answer pleading agency. The fact that the parties treated the question as an issue to be proved or disproved and not a matter to be relied on under the statute makes that question a dead issue, which it is not necessary for us to discuss. Nevertheless, we say this, the defendants having made their election not to stand on the statute, as to failure of the plaintiff to make a verified denial of the allegation of agency constituting an admission thereof, and having elected to litigate the same, were bound by their election and cannot now raise the issue again.

■ Next, the defendants complain the trial court erred in the admission of incompetent medical testimony. The trial court permitted in plaintiff's case in chief plaintiff's counsel to ask questions of Dr. M, an osteopath and a specialist in orthopedic and neurological surgery, which was based upon a medical book by Dr. Reed Catlett, M.D., Professor of Medicine, University of Southern California. The gist of what was

read was that a patient with a "herniated lumbar disc presents a history of pain running down his leg originating either in the region of the low back or other lower extremities." The reading continued in substance was further to the effect "the pain was due to nerve irritation and the sensation is referred down the leg, usually distributed in the posterior thigh, the calf, heel and into the toes." To this reading Dr. M agreed such would be the case. He could hardly do otherwise since his testimony was in all particulars substantially identical to the matter read from the book. The vice of this procedure is readily apparent. From a legal standpoint it is rank hearsay produced by counsel from an author's available textbook and through the medium of interrogation he thus presents the testimony of the author given as it was written, without the particular situation in mind or the sanction of an oath, and without the vouchsafed author being liable to cross examination, in denial of the precedent rights of sequestration of the author as a witness and confrontation of him from the witness stand. For these reasons and other reasons the trial judge erred in permitting counsel for plaintiff to read to his doctor, or any doctor appearing as a witness, from the textbook in question. 32 C.J.S. Evidence § 718, note 94, p. 628.

In this connection, however, the record discloses that not only Dr. M testified for the plaintiff in keeping with the text material, but Dr. P. W did also, in substance.

Dr. F. B's testimony for the plaintiff was in keeping with the text read from to the effect that a displacement of the disc material creates direct pressure on the spinal cord, and nerve roots, giving symptoms of pain and numbness down the leg. Moreover, Dr. McD for the defense, on cross examination, testified in substance that a ruptured intervertebral disc as a result of trauma puts pressure on the nerve roots, leading into the lower extremities resulting in a numbness·thereof, as the result of either acute or chronic trauma, with a wasting away in the lower extremities. In this connection, Dr. P. W specifically testified that he found the left calf of Mrs. Ingle's leg to be "one-half inch smaller than the right." He also testified that Mrs. Ingle complained of lower back pains and pain in the lower extremities. The record herein conclusively shows that the matter read from the text was cumulative and was not reversible error, under Clinton & O. W. Ry. Co. v. Dunlap, 75 Okl. 64, 181 P. 312, holding:

"While there are some authorities to the contrary, we agree that, according to the great weight of authority, this method of examination was improper, and the excerpts from the text were inadmissible, but our examination of the record discloses that this evidence was merely cumulative."

We are, therefore, in the final analysis, of the opinion this testimony, under the conditions herein presented, while error, was not injurious under the conditions existing in this case. It has been repeatedly held by all authorities that error without injury is not reversible.

Such are the irrefutable conclusions of this record. There being no substantial error, the judgment of the lower court is accordingly affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.

The court acknowledges the aid of Supernumerary Judge JOHN A. BRETT in the preparation of this opinion. After a tentative opinion was written the cause was assigned to a Justice of this court. Thereafter, upon report and consideration in Conference, the foregoing opinion was adopted by the court.